# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| STEVEN F. LEWIS, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 05-0466-CV-W-GAF-P |
| MIKE KEMNA, et al.,[1] | ) |
| Respondents. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

Petitioner, Steven F. Lewis, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 17, 2005, seeking to challenge his 1999 convictions and sentences for first degree assault and first degree burglary, which were entered in the Circuit Court of Henry County, Missouri. Petitioner raises three grounds for relief: (1) trial court error in admitting evidence of uncharged crimes; (2) ineffective assistance of trial counsel for not providing petitioner all of the information related to the plea bargain offered by the State; and (3) ineffective assistance of trial counsel for not investigating or presenting evidence of an alternate source of petitioner's hand injuries.

Respondent concedes exhaustion of petitioner's grounds for relief. However, respondent contends that Grounds 1 and 2 are without merit and that Ground 3 is procedurally defaulted.

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> Steven F. Lewis was convicted by a jury of assault in the first degree, § 565.050, and burglary in the first degree, § 569.160. In accordance with the jury's recommendation, he was sentenced to 30 years imprisonment

---

[1] Because petitioner is challenging a sentence to be served in the future, Missouri Attorney General Jeremiah W. (Jay) Nixon will be added as a party respondent. 28 U.S.C. § 2254, Rule 2(b).

for his conviction of assault and 10 years imprisonment for the burglary conviction, the sentences to run consecutively. He now appeals those convictions.

Lewis lived with his girlfriend, Ms. Sharon Cowhick, and their three children at 201 West Maple, in Rich Hill, Missouri. Sometime after midnight on December 29, 1998, Cowhick and Lewis walked to a neighbor's house so Lewis could look at a car. Cowhick thought Lewis was examining the car because he wanted to steal parts from it, because "[t]hat's is what he normally done[.]" After examining the car, Lewis stole a toy wagon from the yard of that house.

Lewis and Cowhick continued to walk around the block until they reached the backyard of Margie Chandler's home. Chandler was 75 years old and lived alone in a house across the street from Lewis and Cowhick. Lewis told Cowhick to wait outside while he entered Chandler's home. Instead, Cowhick walked home.

Approximately one to one and a half-hours later, Lewis returned home. He acted scared and asked Cowhick to hide his clothes. After she refused, Lewis hid his clothes underneath a floorboard in the house. Lewis then told Cowhick that he might have killed Chandler. He said he hit her because she woke up and could have recognized him.

Later that morning, City Marshall Frank Judd, received a report of a confused and dizzy person at 210 West Maple. When he arrived, he saw that Chandler was severely beaten about the face, had blood on her hair and face, and had cuts all over her face. She was confused and did not know what had happened to her. An ambulance arrived five to eight minutes later and took Chandler to the emergency room. She was treated for nasal fractures, a fracture in the bones around her left eye, a fractured left jawbone, a left global injury, bleeding underneath the brain barrier, and vomiting blood.

As a result of her injuries, Chandler is now totally blind in her left eye. She is still confused, agitated, and forgetful and was unable to testify about the events surrounding her attack. She currently requires 24-hour care and is in a nursing home.

Bates County Sheriff's Deputies Martin and Terry joined Judd at Chandler's residence. They found blood on the walls of Chandler's bedroom, on the bed, and on the door. They also observed a trail of

> blood from the bedroom to the bathroom and a large amount of blood in the bathroom. They discovered that the back screen door had been cut and the door leading out of Chandler's garage was open. During a canvass of the neighborhood, police observed Lewis acting nervously and noticed that he had cuts on his hands and a swollen right hand. After returning to question Lewis further, Deputy Martin arrested him.
>
> Subsequently, Deputy Martin received a tip that the clothing Lewis was wearing at the time of the arrest was not the clothing he had worn on the night in question. One of Cowhick's friends had found clothing in a hole underneath a floorboard inside the Cowhick/Lewis house. Cowhick called the City Marshall who then informed Deputy Martin. He returned to Lewis' residence on either January 20 or 22, 1999, to find the clothing Lewis had worn. Ms. Cowhick invited Deputy Martin into the residence and showed him the clothing where it was originally found. With her consent, he seized the clothing and sent it to the lab.
>
> After being arrested, Lewis wrote a letter to Deputy Martin stating that he had been to Chandler's residence on two previous occasions to steal money. He admitted he had taken Chandler's purse and hid it in his attic, on or by the attic fan. He also admitted to Deputy Martin that he went to Chandler's house on the night she was hurt to rob her, but she woke up and he hit her. Deputy Martin went to Lewis' residence and recovered Chandler's purse from his attic. The purse was one that Chandler had told her daughter had been stolen several weeks prior to the attack.
>
> Lewis wrote more letters while awaiting trial. He wrote a letter to Chandler saying he was sorry for hitting her, that he would probably go to jail for a long time and that he deserved it. He wrote another letter to Deputy Martin claiming that he would not have hit Chandler if he had not been drinking and on drugs.

(Respondent's Exhibit "E," pp. 2-4) (footnotes omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the

-3-

state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[2]  Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1 - TRIAL COURT ERROR

In Ground 1, petitioner alleges that the trial court erred when it allowed evidence of uncharged crimes to be presented at trial. Respondent contends that this ground for relief is without merit.

As a preliminary matter, this ground for relief raises an evidentiary issue. "Questions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which are subject to redress in federal habeas corpus cases." Harrison v. Dahm, 880 F.2d 999, 1001 (8th Cir. 1989) [quoting Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898 (1976)]. Only if the alleged error violates a specific constitutional right or is so prejudicial that it denies due process may a federal court grant habeas corpus relief on a state evidentiary issue. Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994).

> On direct appeal, the Missouri Court of Appeals held as follows:
>
>> On March 9, 1999 Lewis was charged by information with assault in the first degree, forcible rape, and burglary in Bates County Circuit Court. Lewis applied for a change of venue on March 24, 1999, and on September 14, 1999, the case was brought to trial in Henry County Circuit Court. At the pre-trial conference, the charge of rape was dropped. However, during trial, Bates County Sheriff's Deputy Terry

---

[2]In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-4-

mentioned taking a rape kit to the lab along with blood from Lewis and Chandler. The results of the lab tests confirmed that Chandler's blood was found on Lewis' clothing. Lewis was found guilty of assault in the first degree and burglary in the first degree. He was sentenced to serve consecutive terms of 30 years imprisonment for the assault conviction and 10 years imprisonment for the burglary conviction.

Lewis' only point on appeal is that the trial court plainly erred in allowing the State to introduce evidence of uncharged crimes. In particular, Lewis complains about the following: (a) Deputy Terry's testimony at trial that the rape kit had been taken to the lab; (b) Ms. Cowhick's testimony regarding his intent to steal automobile parts and theft of a child's toy wagon; and (c) Deputy Martin's testimony relating to finding and seizing Ms. Chandler's purse in Lewis' home. Lewis argues all three incidents involve uncharged crimes that were irrelevant, highly prejudicial, and inadmissible character evidence with no probative value. He further contends that manifest injustice resulted because the jury was free to base its verdict on his propensity to commit crimes.

Lewis failed to object to this evidence at trial. Despite this fact, Lewis urges this court to consider his appeal under the plain error standard of Rule 30.20. Rule 30.20 states that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Review for plain error involves a two step process. The first step is to determine if plain error has occurred. This is done by determining whether the claim for review "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted.'" **Id.**; *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995). All prejudicial error is not plain error, "plain errors are those which are 'evident, obvious, and clear[.]'" *Scurlock*, 998 S.W.2d at 586 (*quoting State v. Baily*, 839 S.W.2d 657, 661 (Mo. App. W.D. 1992)). If plain error is found, it is up to the discretion of the court whether to proceed to the second step, determining "whether the claimed error resulted in manifest injustice or miscarriage of justice." *Id.* at 587.

"A trial court has broad discretion in deciding whether to admit evidence, and its 'decision will not be disturbed unless clear abuse of discretion is shown.'" *Id.* (*quoting State v. Stoner*, 907 S.W.2d 360, 363 (Mo. App. W.D. 1995)). Because of this, "[t]he plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *Id.* (*quoting State v.*

*Valentine*, 646 S.W.2d 729, 731 (Mo. 1983)). Manifest injustice depends on the facts and circumstances of the particular case. ***State v. Zindel***, 918 S.W.2d 239, 241 (Mo. banc 1996). "When guilt is established by overwhelming evidence no injustice or miscarriage of justice will result from the refusal to invoke the rule." ***State v. Jordan***, 627 S.W.2d 290, 293 (Mo. banc 1982) (*quoting* ***State v. Bainter***, 608 S.W.2d 429, 43 (Mo. App. E.d. 1980)).

Lewis has failed to facially establish that substantial grounds for believing that a miscarriage of justice or a manifest injustice has occurred because there was overwhelming evidence of his guilt. Lewis told Cowhick he had hit Chandler and that he might have killed her because she had woken up and might have recognized him. He was found in close proximity to the scene of the crimes with a swollen right hand and cuts on both hands. Chandler's DNA was found in blood on Lewis' clothing. Lewis wrote a letter to Chandler apologizing and claiming that he deserved to go to prison for a long time. Lewis wrote a letter to Deputy Martin admitting that he went to Chandler's house to steal, but she woke up and he hit her. The strength of this evidence is such that even if the matters about which Lewis complains were trial errors, [Fn5] they could not have resulted in manifest injustice or miscarriage of justice. Accordingly, we decline to exercise our discretion to review for plain error. ***Rule 30.20.***

> [Footnote 5] In this regard, a cursory review of Lewis' complaints suggests that none involve reversible error. The unobjected to remark by Deputy Terry that he took the rape kit to the lab was made when he was explaining what he did with blood samples found at the scene. It was brief and neither inflammatory nor prejudicial. *See* ***State v. Storey***, 901 S.W.2d 886, 898 (Mo. banc 1995). Ms. Cowhick's unobjected to testimony that Lewis was examining the car because he wanted to steal parts and that he stole the toy wagon were made in the context of explaining the circumstances surrounding the offense charged. As such, they were admissible "to present a complete and coherent picture of the events that transpired." ***State v. Pennington***, 24 S.W.3d 185, 190 (Mo. App. W.D. 2000) (*quoting* ***State v. Harris***, 870 S.W.2d 798, 810 (Mo. banc 1994)). Finally, Deputy Martin's testimony relating to finding and seizing the victim's purse in Lewis' home was logically and legally relevant to prove Lewis' motive and intent to steal from

> the victim. Evidence of uncharged crimes is admissible to show motive, intent and a common scheme or plan. ***State v. Gilyard***, 979 S.W.2d 138, 140 (Mo. banc 1998).
>
> Affirmed. ***Rule 30.25(b)***.

(Respondent's Exhibit "E," pp. 4-7) (one footnote omitted).

The resolution of Ground 1 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry Williams v. John Taylor, 529 U.S. 362, 412-13 (2000).[3]

Ground 1 is denied.

## GROUND 2 - INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In Ground 2, petitioner alleges that his trial counsel was ineffective for failing to provide petitioner with all of the available information related to the plea bargain offered by the State. Petitioner also alleges that his decision to reject the State's offer of a thirty to thirty-five year sentence was not "knowingly, voluntarily, or intelligently" rejected.

---

[3] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

In order to succeed on petitioner's claim of ineffective assistance of trial counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's actions in that there is a reasonable probability that, but for counsel's unprofessional acts, the results of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of petitioner's Rule 29.15 motion, the Missouri Court of Appeals rejected this ground as follows:

> In Point I, the appellant claims that the motion court erred in overruling his **Rule 29.15** motion for post-conviction relief, after an evidentiary hearing, because the evidence at the motion hearing clearly established that he received ineffective assistance of counsel for trial counsel's failure to "provide [him] with discovery or otherwise inform him of the state's evidence against him so that he could make a reasoned decision about whether to accept" the State's plea offers or to advise him on whether to accept the offers. As to trial counsel's failure to provide him with discovery or advise him of the State's evidence against him, he claims that counsel failed to inform him that: (1) the State was in possession of the letters he wrote to Cowhick, in which he confessed to committing the charged offenses; and (2) his confession to Officer Martin could be used against him at trial. As to prejudice, he contends that had counsel not been deficient, as alleged, he would have accepted one of the State's plea offers and received a lesser sentence.

\*\*\*

We have no quarrel with the fact that the appellant's trial counsel had a duty to inform him of all of the necessary circumstances of the State's case against him in order to allow him to make an informed and well reasoned decision as to whether to accept the State's plea offers. However, even assuming, *arguendo*, that trial counsel was deficient in that regard, as alleged, the appellant would not be entitled to post-conviction relief, unless he can demonstrate prejudice by showing that had he been adequately informed about the State's case, he would have accepted one of the State's plea offers, rather than going to trial. This he did not do.

At the motion hearing, the appellant relied solely on his own testimony to support his allegations of ineffectiveness. With respect to his contention that, but for counsel's alleged errors, he would have accepted one of the State's plea offers and pled guilty to the charged offenses rather than proceeding to trial, he testified:

> Q. If Jeff Martin had advised you to accept that 30-year offer, would you have done so?
>
> A. Sure would have.
>
> Q. If Jeff Martin would have advised you of what the State's evidence of guilt was against you at the time, would you have accepted the 30-year offer?
>
> A. Yes.

In denying the appellant's motion, the motion court found that the appellant "knew trial was a gamble," but yet he "rolled the dice between 30 and 40 years, or not guilty." The motion court was "left with the inescapable conclusion that [the appellant] had totally unrealistic expectations ... and that he wanted to 'see the hole [*sic*] card' so to speak, and have a jury trial." Thus, the motion court disbelieved the appellant's testimony that had he been properly advised with respect to the State's plea offers, he would have accepted one of the offers, rather than going to trial. Put another way, the motion court determined that, even if trial counsel had informed the appellant that the State was in possession of the Cowhick letters and that his confession to Officer Martin could be used against him at trial, or, had advised him to accept one of the State's offers, he would have nonetheless "rolled the dice" and proceeded to trial. We cannot say that this determination was clearly erroneous, and, therefore, must affirm.

-9-

> The record directly refutes the appellant's claim that he was unaware that his confession could be used against him at trial. It is undisputed that Officer Martin advised the appellant of his *Miranda* rights on January 22, 1999, the day [on] which he confessed, including the fact that anything he said could be used against him in a subsequent trial. Moreover, at the motion hearing, the appellant specifically stated that he knew, at the time he confessed to Officer Martin, that his statement could be later used against him.
>
> As to the Cowhick letters, the appellant would ask us to believe that although he was willing to risk trial, knowing that he had confessed to the police, he would not have risked trial had he known about the State's having the letters containing his confession. Inasmuch as this claim runs contrary to common sense and logic, it is easily understood why the motion court rejected it. And, because "[t]he motion court is not required to believe the testimony of the movant or any other witness at an evidentiary hearing, even if uncontradicted," and that "this court must defer to the motion court's determination of credibility," ***Colbert v. State*, 7 S.W.3d 471, 474 (Mo. App. 1999**)," we cannot say that the motion court's finding and conclusions in denying the appellant's **Rule 29.15** motion were clearly erroneous with respect to his claim [on] this point.
>
> Point denied.

(Respondent's Exhibit "K," pp. 7-12) (standard of review language omitted).

The resolution of petitioner's second ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, <u>supra</u>. Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court finds that trial counsel was not ineffective.

Ground 2 is denied.

# GROUND 3 - PROCEDURAL DEFAULT

In Ground 3, petitioner alleges ineffective assistance of trial counsel for failing to investigate and present evidence of an alternate source of the hand injuries petitioner had at the time of his arrest. Respondent contends that Ground 3 is procedurally defaulted because the Missouri Court of Appeals denied this claim as procedurally deficient.

The record reflects that the Missouri Court of Appeals rejected Ground 3 for failure to satisfy state procedural requirements, as follows:

> In Point II, the appellant claims that the motion court erred in overruling his **Rule 29.15** motion for post-conviction relief, after an evidentiary hearing, because the evidence at the motion hearing conclusively established that he received ineffective assistance of counsel for trial counsel's failure to call any witnesses to contradict the State's assertion that his hand injuries were caused by the assault on the victim. Specifically, he claims that he received ineffective assistance of counsel in that trial counsel was aware that several of the appellant's neighbors "could testify that [his] injuries were actually caused by his having worked on automobiles," but nonetheless failed to call any of his neighbors as witnesses.
>
> In order to establish that trial counsel was ineffective for failing to call a witness, the movant is required to allege and prove that: (1) the witness could have been located through reasonable investigation; (2) the witness would have testified if called; and (3) the testimony would have provided a viable defense. ***Kuehne v. State*, 107 S.W.3d 285, 293 (Mo. App. 2003)** (citing ***White v. State*, 939 S.W.2d 887, 899 (Mo. banc 1997)**). In addition, the movant "also must overcome the presumption that trial counsel's decision not to call a witness is a matter of trial strategy." *Id.*; *see also **State v. Gilpin*, 954 S.W.2d 570, 576 (Mo. App. 1997)** (stating that the movant must show that the decision not to call a witness "involved something other [than] reasonable trial strategy").
>
> At trial, the State introduced evidence concerning numerous cuts on appellant's hands to show that he had, in fact, struck the victim, as alleged. The appellant contends that in order to contradict this evidence, his trial counsel should have introduced the testimony of several neighbors who

would have testified that the appellant had recently performed mechanical work on their automobiles, from which counsel could have argued that the cuts on his hands were not the result of his striking the victim, but instead were the result of his recent mechanical work. In that regard, the appellant alleged in his amended motion:

> MOVANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR COUNSEL'S FAILURE TO INVESTIGATE THE SOURCE OF THE INJURIES TO MOVANT'S HANDS, TO PROPERLY PRESENT THE FACTS TO THE JURY THAT MOVANT'S INJURIES WERE IN-EFFECT, CAUSED BY THE MECHANICAL WORK THAT HE HAD DONE ON NUMEROUS NEIGHBORS AUTOMOBILES, COUNSEL FAILED TO INTERVIEW THESE NEIGHBORS/WITNESSES, AND FAILED TO PRESENT ANY OF THEIR TESTIMONY TO DEMONSTRATE TO THE JURY THAT THE INJURIES ON MOVANT'S HANDS CAME FROM ANOTHER SOURCE OTHER THAN WHAT THE STATE CONTENDS WERE CAUSED BY HIM STRIKING [THE VICTIM] REPEATEDLY.

The appellant failed to alleged, as required, that his neighbors could have been located through reasonable investigation or that they would have testified if called to do so. Therefore, he "failed to allege the basic requirements necessary to show that his trial counsel was ineffective," requiring us to affirm. ***State v. Davison*, 920 S.W.2d 607, 610 (Mo. App. 1996)**.

Even if the appellant's motion were not deficient, his claim in this point would still fail for a lack of proof. At the hearing, the appellant had the burden of showing that the witnesses would have testified, if called, and what they would have testified to. ***Kuehne*, 107 S.W.3d at 293**. In that regard, the appellant alone testified at the motion hearing as to what the witnesses' testimony would have been, if called. Thus, in finding as it did, we can assume that the motion court rejected his testimony, which it was free to do. *See **Vincent v. State*, 607 S.W.2d 815, 816 (Mo. App. 1980)** (holding that post-conviction movant presented "no credible evidence that [the witness] would have testified in a manner beneficial to [him]" in that "the only evidence as to what [the witness] would have testified to were the unsubstantiated, self-serving hearsay statements of

movant and his wife").

> For the foregoing reasons, we cannot say that the motion court's findings and conclusions in denying the appellant's Rule 29.15 motion were clearly erroneous with respect to his claim that trial counsel was ineffective for failing to call any witnesses to contradict the State's assertion that his hand injuries were caused by the assault on the victim.
>
> Point denied.

(Respondent's Exhibit "K," pp. -14).

The United States Court of Appeals for the Eighth Circuit has held that "[t]he failure to satisfy state procedural requirements serves as an adequate and independent state procedural bar to review." Smith v. Groose, 998 F.2d 1439, 1441 (finding that where appellant failed to sufficiently present his claim to the state court because he failed to specifically allege facts that would entitle him to relief as required by Rule 24.035, appellant's claim was procedurally barred). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In his reply, petitioner contends that Ground 3 is not procedurally defaulted because the Missouri Court of Appeals reviewed it anyway. Petitioner also alleges that the Missouri Court of Appeals went beyond its "clearly erroneous" standard of review by denying his claim on the basis of a procedural rule. Finally, petitioner alleges that Ground 3 is not procedurally defaulted because respondent did not raise this objection in the Missouri Court of Appeals. However, these allegations fail to state a cause for petitioner's default of Ground 3.

Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider

-13-

prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). A review of the record reflects that petitioner has failed to satisfy this test.

Petitioner has failed to show cause for and prejudice from his default of Ground 3. He also has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Ground 3 is not required to prevent a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. 478, 495 (1986). Ground 3 is denied.

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for writ of habeas corpus is denied; and

(2) this case is dismissed with prejudice.

       /s/ Gary A. Fenner
       GARY A. FENNER
       UNITED STATES DISTRICT JUDGE

Kansas City, Missouri

Dated: 10/25/05